## RALPH L. EVANS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7107.   Promulgated October 6, 1927.

Petitioner, in 1923, invented at no cost a certain secret process or formula applicable to hair dyes. He desired to obtain the business of Inecto, Incorporated, a New York corporation, all of the stock of which was owned by P. W. Ducker. Ducker caused Inecto, Incorporated, a Delaware corporation, to be organized. The New York corporation transferred all its assets to the Delaware corporation in exchange for all of the latter's stock. The Delaware corporation then borrowed $75,000 from a finance company evidenced by a certified check. The Delaware corporation then endorsed and delivered said check to the petitioner in 1923 in consideration for the secret process. The petitioner then endorsed and delivered said check to the New York corporation in consideration for all of the capital stock of the Delaware corporation. *Held,* that under section 202(c)(3) of the Revenue Act of 1921 the petitioner received no income in 1923 as he had no proprietary right in the check and was in control of the Delaware corporation immediately after the transfer to it of his secret formula.

*Gordon Gordon, Esq.,* for the petitioner.
*Thomas P. Dudley, Jr., Esq.,* for the respondent.

In this proceeding the petitioner seeks a redetermination of his income-tax liability for the calendar year 1923 for which the Commissioner has determined a deficiency in the amount of $16,159.47. The error assigned is that the Commissioner erred in including in the petitioner's income the amount of $75,000 which passed through his hands while consummating a prearranged plan whereby the petitioner was to transfer a certain secret process or formula to a corporation and was to be in control of such corporation immediately after the transfer. The petitioner contends that under section 202(c)(3) of the Revenue Act of 1921 no gain or loss should be recognized.

### FINDINGS OF FACT.

The petitioner, a citizen of the State of New York, in or about the month of May, 1923, without cost or expense, invented a certain secret formula or process applicable to hair dyes. He then sought to acquire the hair-dye business then being conducted by Inecto, Incorporated, a

New York corporation, all the shares of the capital stock of which were then owned or controlled by one Phillip W. Ducker.

Thereafter and as the result of negotiations between the petitioner and Ducker, or between their respective attorneys, looking to the purchase by the petitioner and sale by Ducker of the hair-dye business, Ducker caused a corporation to be organized under the laws of the State of Delaware bearing the name Inecto, Incorporated.

On or about July 28, 1923, and in furtherance of the purchase and sale arrangement above mentioned, Inecto, Incorporated, of New York, transferred and conveyed all its assets to Inecto, Incorporated, of Delaware, and in consideration thereof the entire authorized capital stock of Inecto, Incorporated, of Delaware, to wit, 1,000 shares, was issued and delivered to Inecto, Incorporated, of New York.

In about four hours' time on the afternoon of August 28, 1923, at the office of Stephen M. Bell, attorney for Inecto, Incorporated, corporations, and Ducker, and in the presence of the petitioner, Gordon Gordon, his attorney, Seymour Phillips, an assistant in Gordon's office, Bell, Neal R. Andrews and one Pledger, officers and directors of Inecto, Incorporated, corporations, and Milton J. Kupfer, attorney for the Manufacturers Finance Co. of Baltimore, Md., the following acts and things were done and performed:

The petitioner, his attorney, Gordon, and one Phillips, who was Gordon's assistant, were first elected officers of the Inecto, Incorporated, of Delaware. The petitioner then offered to transfer and deliver to Inecto, Incorporated, of Delaware, his secret process or formula applicable to hair dyes. Inecto, Incorporated, of Delaware, by resolution of its board of directors, Evans not voting, accepted said offer and authorized the pledging of its accounts receivable in the amount of $100,000 odd, to secure a loan from the Manufacturers Finance Co. of Baltimore, Md., in the amount of $75,000. The Manufacturers Finance Co., acting by and through Kupfer as its attorney, delivered to Inecto, Incorporated, of Delaware, as a loan, its certified check for $75,000, and took as security the pledging of the accounts receivable of the Delaware corporation in the amount of $100,000 odd and in addition the personal guarantee of the petitioner as an individual. The check was then endorsed as follows:

> Pay to the order of
> Ralph L. Evans
> Inecto Inc. a
> Delaware Corp.
>   by Neal R. Andrews, Mgr.
>     Gordon Gordon, V. Pres.

> Pay to the order of
> Inecto Inc. a
> N. Y. Corporation
> Ralph L. Evans

All of the above quoted endorsement was in the handwriting of Gordon, except the signatures of Neal R. Andrews and Ralph L. Evans, the petitioner. At the time the check was handed to Evans, Gordon had already prepared the endorsement to the New York corporation with the exception of Evans' signature. It was then handed to the petitioner in consideration of the transfer by him of the secret process to the Delaware corporation. It was not intended that Evans was to have any control over the check. He immediately affixed his signature to Gordon's endorsement, handed the check back to Gordon, who then delivered it to Bell, the attorney for Inecto, Incorporated, of New York, and simultaneously as attorney for the petitioner, received from Bell, acting for Inecto, Incorporated, of New York, a certificate duly endorsed in blank for the entire capital stock, to wit, 1,000 shares of Inecto, Incorporated, of Delaware.

Subsequently, the check for $75,000 was deposited to the credit of Inecto, Incorporated, of New York, and in due course such sum was paid out and distributed by the corporation in liquidation to Phillip W. Ducker, its sole stockholder.

Ducker was unwilling to part with control of the corporation unless simultaneously he received $75,000 by means of this indirect method. It had been suggested that the check be endorsed directly to Inecto, Incorporated, of New York, but Ducker's attorney said the only way he would part with the stock was to part with it for a check made payable to Evans personally and endorsed by him to the New York corporation.

## OPINION.

GREEN: The deficiency here in controversy arises as the result of the determination of the Commissioner that the petitioner realized taxable income in the amount of $75,000 on the basis that he received $75,000 from Inecto, Incorporated, of Delaware in exchange for his secret process or formula which had cost him nothing. On the other hand, it is the petitioner's contention that under section 202(c)(3) of the Revenue Act of 1921 he realized no taxable income for the reason that looking at the transaction as a whole, he had merely transferred property to a corporation and immediately after the transfer was in control of such corporation.

The section relied upon by the petitioner provides in part as follows:

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

    *        *        *        *        *        *        *

(3) When (A) a person transfers any property, real, personal or mixed, to a corporation, and immediately after the transfer is in control of such corporation, or (B) two or more persons transfer any such property to a corporation, and immediately after the transfer are in control of such corporation, and the amounts of stock, securities, or both, received by such persons are in substantially the same proportion as their interests in the property before such transfer. For the purposes of this paragraph, a person is, or two or more persons are, "in control" of a corporation when owning at least 80 per centum of the voting stock and at least 80 per centum of the total number of shares of all other classes of stock of the corporation.

It is clear that had Inecto, Incorporated, of Delaware, endorsed the check of $75,000 over to the New York corporation in exchange for all its own stock and then exchanged its own stock for the petitioner's secret process, this question could not have arisen. Does the fact that all the parties to the transaction agreed between themselves upon this indirect method of first having the Delaware corporation endorse the check over to the petitioner in exchange for his secret process or formula and then having the petitioner endorse the check over to the New York corporation in exchange for the Delaware corporation's stock, take the transaction out of section 202(c) (3) *supra*. We think not. The petitioner at no time had any proprietary right in the check for $75,000. He had no right to use it and employ it as his own. It had been suggested that the check be endorsed directly to Inecto, Incorporated, of New York, but Ducker's attorney had refused to part with the stock unless the check first went through the petitioner's hands. It was not intended that Evans was to have any control over the check. He was to transfer his formula to the Delaware corporation and although the check was first endorsed to him, it was not intended that he was to receive anything except all the capital stock of the Delaware corporation.

The respondent contends that the solution to the question here is controlled by the decisions of this Board in the appeals of *Edward A. Langenbach*, 2 B. T. A. 777; *B. F. Saul, et al.*, 4 B. T. A. 639; and *W. J. Hunt*, 5 B. T. A. 356. In our opinion those cases are not in point for the reason that the questions, facts, and statutes involved therein were entirely different. The peculiar wording of the 1921 Act is a complete departure from the prior acts under which the three cited cases were decided. The Senate Finance Committee at page 11 of its Report No. 275, refers to this complete change in the law in the following language:

Section 202 (subdivision c) provides new rules for those exchanges or "trades" in which, although a technical "gain" may be realized under the present law, the taxpayer actually realizes no cash profit.

Under existing law "when property is exchanged for other property, the property received in exchange shall, for the purpose of determining gain or loss, be treated as the equivalent of cash to the amount of its fair market value,

if any * * * ". Probably no part of the present income tax law has been productive of so much uncertainty or has more seriously interfered with necessary business readjustments. The existing law makes a presumption in favor of taxation. The proposed act modifies that presumption by providing that in the case of an exchange of property for property no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value, and specifies in addition certain classes of exchanges on which no gain or loss is recognized even if the property received in exchange has a readily realizable market value. These classes comprise the cases * * * where an individual or individuals transfer property to a corporation and after such transfer are in control of such corporation.

The preceding amendments, if adopted, will, by removing a source of grave uncertainty and by eliminating many technical constructions which are economically unsound, not only permit business to go forward with the readjustments required by existing conditions but also will considerably increase the revenue by preventing taxpayers from taking colorable losses in wash sales and other fictitious exchanges.

In order to come within the statute under which the petitioner claims exemption, it is only necessary for him to show (1) that he transferred property to a corporation, and (2) that immediately after such transfer he was in control of such corporation. It is admitted that he transferred the secret process to the Delaware corporation. The only question remaining is whether it can be said that he was in control of the corporation immediately after the transfer. The evidence shows that prior to the transfer it was agreed that Evans was not to have any rights in the check, but that immediately he was to endorse it over to the New York corporation and receive simultaneously all the stock of the Delaware corporation. Ducker would not part with control of the stock except it be done in that manner. Under such circumstances, it is our opinion that Evans acted as a mere conduit to pass the check from the Delaware to the New York corporation and that he realized no taxable gain or loss on the transaction.

Reviewed by the Board.

*Judgment will be entered on 15 days' notice, under Rule 50.*